# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DANIEL ABRAHAM LORENZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **WAL-MART STORES, INC.,** | § | **SA-05-CA-0319 OG (NN)** |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   **Hon. Orlando Garcia**
**United States District Judge**

## I. Introduction

The matters before the Court are defendant Wal-Mart Stores, Inc.'s motion for summary judgment (Docket Entry 38), and plaintiff Daniel Lorenz's motion to strike portions of defendant's summary judgment proof (Docket Entry 44).  After considering the motions and the entirety of the record in this matter, it is my recommendation that defendant's motion for summary judgment be **GRANTED**, and plaintiff's motion to strike be **DENIED**.

I have authority to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1]

---

[1] Docket Entry 6.

## II. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the statute conferring federal

question jurisdiction, and 42 U.S.C. § 2000e-5(f)(3) of Title VII of the Civil Rights Act of 1964

("Title VII").

## III. Procedural History

Plaintiff commenced the instant action pro se by submitting a complaint, which was filed

on May 4, 2005,[2] alleging employment discrimination in violation of Title VII.[3]  Defendant timely

filed a motion to strike certain portions of plaintiff's complaint pursuant to Federal Rule of Civil

Procedure 12(f).[4]

On July 11, 2005, I entered an Order and Opinion denying defendant's motion to strike

and summarizing plaintiff's asserted causes of actions as religious discrimination under Title VII,

infliction of emotional distress, libel and slander.[5]  On August 9, 2005, defendant filed a Federal

Rule of Civil Procedure 12(b) motion to dismiss plaintiff's claims for failure to provide reasonable

---

[2] Plaintiff filed a motion to proceed *in forma pauperis* on April 19, 2005, Docket Entry 1, that was granted by Order entered on May 4, 2005.  Docket Entry 2.  The Clerk then filed plaintiff's complaint on May 4, 2005. Docket Entry 3.

[3] In late July 2004, plaintiff filed a state court action against the Texas Workforce Commission (TWC) and Wal-Mart Associates, Inc., Case No. 9197-04 in the 216th Judicial District Court of Bandera County, Texas, and a separate federal action naming the same defendants, SA-04-CA-0669.  Both cases asserted claims against the TWC for negligent misrepresentation and against Wal-Mart for wrongful discharge.  Plaintiff filed a motion to dismiss case SA-04-CA-0669, which the District Court granted on August 17, 2004. On September 7, 2004, defendant Wal-Mart removed the state court action, Case No. 9197-04, to this Court where the Clerk assigned it case number SA-04-CA-0806.  In an Order entered on May 24, 2005, the District Court granted defendant Texas Workforce Commission's motion to remand to state court the portion of the action against it.  In the same Order, the District Court granted defendant Wal-Mart's motion to dismiss the claims against it because plaintiff had failed to exhaust his  administrative remedies.  Plaintiff subsequently filed a notice of appeal of the District Court's Order to the Fifth Circuit Court of Appeals, where the appeal remains pending, Case No. 05-50938.

[4] Docket Entry 8.

[5] Docket Entry 13.

religious accommodation, religious harassment, intentional infliction of emotional distress, libel and slander.[6]

On March 1, 2006, I issued a Memorandum and Recommendation in which I recommended that the District Court grant defendant's motion to dismiss plaintiff's Title VII claim for religious harassment, plaintiff's claims for libel and slander, and plaintiff's claim for intentional infliction of emotional distress, and deny defendant's motion to dismiss the claim for failure to provide religious accommodation.[7]  After considering plaintiff's objections,[8] the District Court entered an Order accepting the Memorandum and Recommendation on March 28, 2006.[9]

Defendant filed the instant motion for summary judgment on February 27, 2006.[10]  Plaintiff responded to the motion for summary judgment on March 20, 2006,[11] and contemporaneously filed his motion to strike portions of defendant's summary judgment proof.[12]

## IV. Issues Presented

1. Has plaintiff demonstrated genuine issues of material fact for trial that defendant terminated his employment based on his religion and a preference for members of other religious faiths?

2. Has plaintiff demonstrated genuine issues of material fact for trial that defendant failed to reasonably accommodate plaintiff's religious practices?

---

[6] Docket Entry 18.

[7] Docket Entry 40.

[8] Docket Entry 42.

[9] Docket Entry 47.

[10] Docket Entry 44.

[11] Docket Entries 45, 46.

[12] Docket Entry 44.

## V. Undisputed Facts

**A. Plaintiff's employment history with Wal-Mart**

Plaintiff is a former employee of defendant.  He began employment at the Wal-Mart Store located at 1381 South Main Street, Boerne, Texas, on March 10, 2003, as an associate (cashier).  Upon being hired, plaintiff received and read a copy of the Wal-Mart Associates Handbook.  The Associates Handbook sets out defendant's policies and procedures.  Plaintiff also passed an interactive computer course on "Anti-Harassment and Inappropriate Conduct," and admitted that he was familiar with defendant's policy on harassment and conduct as set forth in the Associates Handbook.  Plaintiff understood defendant's coaching policy under which associates who did not meet the company's performance and conduct expectations would be subject to progressive discipline.  He also understood that defendant wanted to present the best possible image to its customers at all times.  Plaintiff knew that if he violated defendant's anti-harassment policy, he could be subjected to disciplinary action, including immediate termination.

On August 23, 2003, plaintiff transferred to a sales floor associate position in the bakery department.  While working in the bakery department, plaintiff began wearing a priest's shirt and collar.  On various occasions, plaintiff reported to work wearing a beret and court jester or joker's hat, along with the priest's shirt and collar.

On December 13, 2003, plaintiff transferred to an overnight stocker position in the general merchandise department.  While working as an overnight stocker, plaintiff began wearing a "Muslim headdress" or "kaffiyeh"[13] to work.  Along with the kaffiyeh, he wore a "fanny pack"

---

[13] A kaffiyeh is "an Arab headdress consisting of a square of cloth folded to form a triangle and bound on the head with an agal" (a cord).  **Webster's Third New International Dictionary**, 1230 (1993).

with an anarchy symbol, peace symbol key chain, and dragon icon hanging from it.  Plaintiff used

the pack to carry personal items including his driver license, cell phone, and head sets.  He also

wore a chain with multiple crosses hanging from it and a necklace with a crucifix.  The kaffiyeh,

"fanny pack" with symbols, chain with crosses, and necklace with crucifix will be collectively

referred to hereafter as "Attire."

On February 23, 2004, Steven Shadrock, store manager of the Boerne Wal-Mart Store,

notified plaintiff that a customer had complained about plaintiff's Attire.  At the meeting, Mr.

Shadrock discussed the importance of customer perception and respect for individuals with the

plaintiff.  Mr. Shadrock  informed plaintiff that his Attire did not comply with Wal-Mart's dress

code policy, and he could no longer wear a priest shirt and collar and the crucifix necklace  to

work.  Plaintiff would be allowed to wear the kaffiyeh.  Mr. Shadrock informed plaintiff that if he

persisted in wearing the Attire, he would be subjected to a disciplinary action referred to as a

coaching.

According to Mr. Shadrock, around  February 23, 2004, other members of management

informed him that additional customers and some employees had complained about plaintiff's

Attire.  Based on his discussions with his managers, Mr. Shadrock concluded that the customers

and employees viewed plaintiff's wearing of articles associated with different religions, along with

other symbols, as mocking the symbolism of the religious articles.[14]

Plaintiff reported to work on  February 27, 2004,  wearing the Attire.  Mr. Shadrock met

with plaintiff the following morning and told plaintiff that he could not wear the prohibited articles

---

[14] Plaintiff disputes that additional customer and employee complaints were lodged against him and objects to the affidavits provided in Docket Entry 38, Exhibits D-H as being untruthful and containing hearsay. Defendant has limited the use of these Exhibits to only show the evidence upon which that Mr. Shadrock based his decision concerning plaintiff's Attire and not for the truth of whether customers were actually offended by plaintiff's Attire. Docket Entry 48 at 3.

because they violated the company dress code and the company's policy against inappropriate conduct.  Mr. Shadrock explained the company's disciplinary procedure should plaintiff continue to report to work wearing the Attire. Mr. Shadrock again informed plaintiff that he could wear the kaffiyeh.

Plaintiff reported to work for the overnight shift on February 28, 2004, wearing the prohibited Attire.  Assistant managers Mr. Perez and Ms. Joji issued plaintiff a written coaching and advised him that he must follow defendant's dress code policy.  If he refused to comply with the dress code and continued to wear the Attire to work, plaintiff would be subject to the next level of discipline.

Plaintiff reported to work on February 29, 2004, wearing the Attire.  On March 1, 2001, plaintiff had a "Decision Day" meeting with assistant managers Mr. Perez and Ms. Gonzalez.[15]  In the meeting, Ms. Gonzalez discussed the customers' perceptions and her own religious beliefs with plaintiff.  Ms. Gonzalez explained that because it was the season of Lent, the kaffiyeh worn with the priest shirt offended Catholic customers.

Plaintiff reported to work for the overnight shift on March 1, 2004, wearing the prohibited Attire.  Ms. Gonzalez met with plaintiff.  During the meeting, plaintiff refused to change clothes and remove the Attire.  As a result, Mr. Shadrock and Ms. Gonzalez informed plaintiff that his employment would be terminated.  Plaintiff was discharged on March 1, 2004.

**B. Plaintiff's religious beliefs**

---

[15] The timing of these meetings is unclear.  Plaintiff worked the overnight, so he would begin work on one calendar date and complete his shift on the following calendar date.  Defendant's statement of undisputed facts claims that "on or about March 1, again after reporting to work wearing the Attire" management held the Decision Day meeting.  According to defendant, Ms. Gonzalez sent plaintiff home with a paid day off.  It is unclear whether the paid day off was to be for February 29, or March.1.  It is also unclear whether these meetings were held in the early hours of the morning just after midnight or later, during more conventional business hours.

Plaintiff does not subscribe to any one particular religion.  He refers to his religious beliefs as "Universal Belief System," and to his knowledge, only plaintiff and his mother practice this particular religion. According to plaintiff, Universal Belief System stresses tolerance and acceptance of other people's religious beliefs.  It also leaves up to the individual how to express his or her acceptance of the various religions.  Nothing in Universal Belief System requires plaintiff to express his or her acceptance in a specific manner, dress in a particular manner, wear certain articles of clothing, or exhibit particular symbols.  Expression and dress are left up to the individual.  For example, plaintiff's mother does not wear a priest shirt or a kaffiyeh.  Plaintiff indicated that his mother wears an anarchy symbol on her shoelaces.

Plaintiff practiced Universal Belief System prior to beginning his employment with defendant.  However, he did not express his tolerance of other religions through his clothing when he first commenced his employment.  At his job interview for the associate position, plaintiff wore a short sleeve T-shirt and beige pants.  Plaintiff did not wear a kaffiyeh, a priest's shirt with collar, or chains with symbols to the interview.

Plaintiff does not wear the Attire at all times.  He does not wear the Attire while working on his vehicle.  He is concerned that he will damage the articles and in so doing show disrespect to them. Plaintiff was not similarly concerned with damaging the Attire while working at the Wal-Mart Store.  Several of the crosses and symbols have fallen off the chain.  Plaintiff has not replaced the crosses.  He explains the loss of the crosses as being a timing device.  Furthermore, plaintiff has been seen in public by defendant's other employees wearing clothing other than the Attire.[16]

---

[16] Plaintiff has objected to certain employee affidavits claiming that the affiants had seen plaintiff in public without the Attire.  Plaintiff's objections go to the particularity of the statements requesting specific time and place of the sightings.  However, he does not dispute the fact that the affiants may have seen him without the Attire and offers no contrary evidence to show that the affiants were mistaken.  Further, in his deposition, plaintiff admits that he does not wear the Attire when working on his car.

# VI. <u>Analysis</u>

## A. Summary judgment standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56 provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[17]

Rule 56 requires that there be no genuine issue of material fact.  A fact is material if it might affect the outcome of the lawsuit under the governing law.[18]  A dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[19]  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[20]

The movant on a summary judgment motion bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[21]  To satisfy this burden, the movant must either

---

[17] Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).

[18] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Thomas v. LTV Corp.**, 39 F.3d 611, 616 (5th Cir. 1994).

[19] **Anderson**, 477 U.S. at 248; **Wise v. E.I. DuPont De Nemours & Co.**, 58 F.3d 193, 195 (5th Cir. 1995).

[20] **Anderson**, 477 U.S. at 249.

[21] **Celotex Corp.**, 477 U.S. at 323.

submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[22] Regardless of whether the movant accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[23]   Once the movant has carried that burden, the burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[24]

Importantly, the non-moving party cannot discharge this burden by referring to the mere allegations or denials of the non-moving party's pleadings.[25]   Rather, the non-movant must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial.[26]   The court will look at the record in the light most favorable to the non-movant drawing all inferences most favorable to that party.[27]   Nevertheless, "conclusory allegations, speculation, and unsubstantiated

---

[22] **Edwards v. Aguillard**, 482 U.S. 578, 595 n.16 (1987); and **Celotex Corp.**, 477 U.S. at 325.

[23] **Id.**

[24] **Anderson**, 477 U.S. at 257.

[25] Fed. R. Civ. P. 56(e); **Anderson**, 477 U.S. at 250; **State of Texas v. Thompson**, 70 F.3d 390, 393 (5th Cir. 1995).

[26] **Celotex Corp.**, 477 U.S. at 324; **Fields v. City of South Houston, Texas,** 922 F.2d 1183, 1187 (5th Cir. 1991); **Neff v. American Dairy Queen Corp.**, 58 F.3d 1063, 1065 (5th Cir. 1995).

[27] **Hibernia Nat'l Bank v. Carner**, 997 F.2d 94, 97 (5th Cir. 1993).  **See also** **Little v. Liquid Air Corp.**, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a nonmovant cannot discharge her burden with doubt as

assertions are inadequate to satisfy the non-movant's burden."[28]  Summary judgment is mandated if

the non-movant fails to make a showing sufficient to establish the existence of an element essential

to his or her case on which he or she bears the burden of proof at trial.[29]  Accordingly, summary

judgment motions permit the court to resolve lawsuits without the necessity of trials if there is no

genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of

law.[30]

## B. Motion to strike

Plaintiff filed the motion to strike on March 20, 2006, objecting to parts of affidavits

offered by defendant in support of its summary judgment motion.[31]  Defendant responded to the

motion to strike on April 3, 2006.[32]

Relevant to the motion to strike, Rule 56(e) instructs:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set
> forth such facts as would be admissible in evidence, and shall show affirmatively
> that the affiant is competent to testify to the matters stated therein. Sworn or
> certified copies of all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith. The court may permit affidavits to be
> supplemented or opposed by depositions, answers to interrogatories, or further
> affidavits....

Under Rule 56(e), affidavits offered to support a summary judgment motion must meet

---

to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence).

[28] **See Douglass v. United Services Auto. Ass'n**, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing **Forsyth v. Barr**, 19 F.3d 1527, 1533 (5th Cir. 1994)).

[29] **Celotex Corp.**, 477 U.S. at 322 ("In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of the proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").  **Id.** at 323.

[30] **See Fields**, 922 F.2d at 1187.

[31] Docket Entry 44.

[32] Docket Entry 49.

three requirements.  The affidavit must be made on personal knowledge, must set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated in the affidavit.[33]  If the affidavit fails to meet any of these requirements, a motion to strike that sets forth specific objections is the proper method for the opposing party to challenge the affidavit.[34]  An opposing party may also move to strike an affidavit supporting a motion for summary judgment that contains conclusory statements or statements that constitute hearsay.[35]  If only portions of the affidavit are objectionable, the court should disregard the inadmissible  portions and consider the remaining parts of the affidavit in determining the motion for summary judgment.[36]  A court has broad discretion to grant or deny a motion to strike.[37]

     In this case, plaintiff objects to portions of the affidavits of Aaron Brothers,[38] Leticia Gonzalez,[39] Stephen Shadrock,[40] Sary Bolanos,[41] and Loretta Carpenter.[42]  While plaintiff cites to specific portions of each affidavit,[43] his objections generally fall into three categories.  He contends

---

[33] **Casas Office Machines, Inc. v. Mita Copystar America, Inc.**, 42 F.3d 668, 682 (1st Cir. 1984).

[34] **Rushing v. Kansas City Southern Ry. Co.**, 185 F.3d 496, 506 (5th Cir.1990), superceded by statute on other grounds as noted in **Mathis v. Exxon Corp.**, 302 F.3d 448, 459 n. 16 (5th Cir.2002).

[35] **Spector v. Experian Information Services Inc.**, 321 F.Supp.2d 348, 352 (D.Conn. 2004).

[36] **Lee v. National Life Assurance Co. Of Canada**, 632 F.2d 524, 529  (5th Cir.1980).

[37] **Canady v. Erbe Elektromedizin GmbH**, 384 F.Supp.2d 176, 180 (D.D.C. 2005).

[38] Docket Entry 38, Exhibit D.

[39] Docket Entry 38, Exhibit E.

[40] Docket Entry 38, Exhibit F.

[41] Docket Entry 38, Exhibit G.

[42] Docket Entry 38, Exhibit H.

[43] Docket Entry 44.

that the affidavits contain hearsay statements concerning complaints lodged against him, that the affidavits are inconsistent with the affiants' statements in the affidavits supplied to the Equal Employment Opportunity Commission ("EEOC") during the course of its investigation of plaintiff's claims, and that the affiants "failed to confirm the truthfulness of the statement[s]" by bringing forward additional evidence to support the affidavits.

Defendant responds that the identified statements are not hearsay because they are not offered for the truth of the matters asserted.[44] Instead, defendant explains that the statements show that Management relied upon complaints from customers and associates in reaching its decision to terminate plaintiff's employment. Therefore, the affidavits should be considered in determining the summary judgment motion.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[45] In the definition of hearsay, a "declarant" is a "person who makes a statement,"[46] and a "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."[47] Under Rule 56(e), documents containing hearsay statements, that would not be admissible as testimony at trial, may not be set forth in an affidavit to

---

[44] Defendant claims that plaintiff failed to comply with Local Rule CV-7(d) by filing his motion to strike and responses to the summary judgment motion after the time allowed by the Rule. Defendant also notes that the total number of pages of plaintiff "collective" responses exceeded the number allowed by the Rule. In a footnote, defendant asks that plaintiff's responses to the summary judgment motion be stricken. Docket Entry 48, 49 at 1 n. 1. However, defendant did not file a motion to strike, therefore, this issue is not properly before the Court.

[45] Fed. R. Evid. 801(c).

[46] Fed. R. Evid. 801(b).

[47] Fed. R. Evid. 801(a).

support a motion for summary judgment.[48]

Defendant has expressly limited the affidavits to show that Management based its termination of plaintiff's employment on communications from other employees who reported that they had received complaints concerning plaintiff's Attire.  To the extent that the affidavits show that Mr. Shadrock was notified of complaints lodged by customers, the statements are not offered for the truth of the matter and are admissible.[49] They may be considered as evidence that the affiants reported complaints to management.

To the extent that plaintiff argues that the affidavits supporting the summary judgment motion are inadmissable because they either contain different language or omit facts that were present in the affidavits submitted to the EEOC, plaintiff's argument is not persuasive.  Plaintiff provides no authority holding that defendant is limited to using the affidavits submitted to the EEOC  and may not seek new statements from potential witnesses.  Furthermore, a review of the affidavits supporting the summary judgment motion does not reveal any statements that contradict the sworn statements provided to the EEOC.  The summary judgment affidavits merely vary in the amount of detail concerning the affiants' observations of plaintiff's Attire.  Therefore, those statements identified by defendant as being inconsistent with the prior affidavits provided to the EEOC should not be stricken, and may be considered in determining the motion for summary judgment.

Plaintiff also fails to cite authority for his argument that supporting documentation must be

---

[48] **H. Sand & Co., Inc. v. Airtemp Corp.**, 934 F.2d 450, 454-455 (2d Cir. 1991).

[49] **See** **United States v. Chavis**, 772 F.2d 100, 104 (5th Cir. 1985) (evidence of complaints made against an employee are admissible over a hearsay objection as long as the complaints are not used for the truth of the individual complaints, but instead, are used to show that the defendant was notified of the complaints).

attached to the affidavits to show the truthfulness of the statements contained in the affidavits. To the extent that plaintiff disputes the facts contained in the affidavit, Rule 56(e) places the affirmative obligation on plaintiff to come forward with his own affidavits or other evidence to contradict defendant's evidence and show that a genuine issue exists for trial.  Therefore, plaintiff's argument that defendant must attach supporting document to the affidavits to show the truthfulness of the statements is unpersuasive.

Based on the foregoing reasons, I recommend that plaintiff's motion to strike be **DENIED**.

## C.  Legal standards for discrimination under Title VII

Cases brought under Title VII for discrimination based on religion fall into two general categories.[50]  In one line of cases, the plaintiffs allege that employers terminated their employment based solely on their religious preferences or beliefs.[51]  In the other line of cases, the plaintiffs contend that their employers refused to accommodate a religious belief or practice.

Under the termination analysis, actions for employment discrimination are subjected to a burden shifting framework.  First, the employee alleging the discrimination bears the burden of proving a *prima facie* case of discrimination based on an adverse employment action.  If he or she does so, the burden then shifts to the employer to establish a legitimate reason for the adverse action.  When the employer proves a lawful, non-discriminatory reason for the adverse action, the burden then shifts back to the plaintiff-employee to show that the alleged non-discriminatory reason was mere pretext for discriminatory conduct[52] or that the defendant's non-discriminatory

---

[50] **See Van Koten v. Family Health Management, Inc.**,  955 F.Supp. 898, 900 (N.D. Ill. 1997) (identifying the two categories and identifying cases in each line).

[51] **Id.** at 900-01.

[52] **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973); **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133 (2000).

reason was only one of the reasons for its conduct while plaintiff's status as a member of a protected class is another motivating factor in the conduct (mixed motive alternatives).[53]

A *prima facie* case of employment discrimination under Title VII requires the alleged victim to establish:

> (1) he or she was a member of a protected class, (2) he or she was qualified for the position he or she lost, (3) he or she suffered an adverse employment action, and (4) the plaintiff's former position remained open to similarly qualified applicants.[54]

The Fifth Circuit requires that the adverse action about which the plaintiff complains must be an ultimate employment decision, such as one involving hiring, discharging, granting leave, promoting, or compensating.[56]  Furthermore, it is logical and appropriate to require the plaintiff to show that the employer had knowledge of the plaintiff's religion in order to be accused of discriminating on that basis.[56]

A Title VII claim based on a refusal to accommodate religious belief requires a different *prima facie* showing.  In this type of case, the plaintiff must establish that 1) he or she had a bona fide religious belief that conflicted with an employment requirement, 2) he or she informed the employer of the belief, and 3) he or she was discharged for failing to comply with the conflicting employment requirement.[57]  Once the plaintiff establishes a *prima facie* case, the burden shifts to

---

[53] **See also Torrez v. Milk Products, L.P.**, 402 F.Supp.2d 773, 776-77 (W.D. Tex. 2005) (explaining the **McDonnel Douglas** framework and adding the mixed motive element).

[54] **Van Koten**, 955 F.Supp. at 901.

[56] **Hernandez v. Crawford Bldg. Material Co.**, 321 F.3d 528, 531-32 (5th Cir. 2003) (citing **Dollis v. Rubin**, 77 F.3d 777, 781-82 (5th Cir.1997)).

[56] **Van Koten**, 955 F.Supp. at 901.

[57] **Weber v. Roadway Exp., Inc.**, 199 F.3d 270, 273 (5th Cir. 2000).

the defendant to show that it could not reasonably accommodate the plaintiff's religious beliefs without experiencing undue hardship. Undue hardship exists when an employer must bear more than a *de minimus* cost to accommodate an employee's religious beliefs.[58]

### 1. Did plaintiff demonstrate a *prima facie* case for discriminatory discharge?

In this case, plaintiff claims that he was discharged from his employment based on his religion, and that defendant's management preferred employees who practiced the Catholic religion. Defendant denies any discriminatory purpose and responds that plaintiff was discharged solely due to his failure to comply with defendant's dress code, and anti-harassment and offensive conduct policies. Defendant argues that it based its decision on customer and employee complaints. As such, the decision to discharge plaintiff was not a pre-text for religious discrimination, but instead was a legitimate business decision.

Under the first element of his *prima facie* discriminatory discharge case, plaintiff must show that he is a member of a protected class, in this case a member of a religion. Title VII does not require a religious belief to be espoused by or accepted by an established religious group.[59] Religion includes "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.... The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee...."[60]

There is no dispute that plaintiff has strongly held religious beliefs. Plaintiff calls his belief

---

[58] **Id.**

[59] **Van Koten**, 955 F.Supp. at 902.

[60] **Id.** (quoting 29 C.F.R. § 1605.1(1990)).

16

system "Universal Belief System" and provided numerous pages with his summary judgment proof devoted to the tenets of the belief.[61]  Defendant acknowledges that there is no dispute that the tenets of plaintiff's religion include 1) never hurt anyone, 2) do not steal, 3) try not to offend anyone, 4) demonstrate dignity and respect to others, 5) do not eat animals, 6) accept the way other people believe, 7) treat fellow man fairly, 8) have a concern to help others, and 9) ensure that the world leaders treat the citizens they govern in a humane manner.  Therefore,  plaintiff has established the first element of his *prima facie* case.

Plaintiff also easily meets the second and third elements.  Defendant does not dispute that plaintiff adequately performed his job with defendant.  Further, plaintiff provided a job performance evaluation showing that he met his job requirements.[62]  Likewise, defendant does not dispute that through the termination of his employment plaintiff has suffered an adverse employment action.

Plaintiff also satisfies the fourth element.  At the time of his dismissal, plaintiff was employed as one of a number of overnight stockers.  He was generally identified as an Associate. Defendant does not dispute that the position that plaintiff occupied remains open to persons who meet the qualifications for the job.

However, plaintiff has failed to clearly demonstrate that defendant had knowledge of plaintiff's religious beliefs.  Plaintiff argues that he "substantially informed his employer of his belief."[63]  In support of his argument, plaintiff cites to two exhibits that he offered in resistance to

---

[61] Docket Entry 46, Exhibits O, AD.

[62] Docket Entry 46, Exhibit BA.

[63] Docket Entry 43 at 4.

17

the summary judgment motion.  The first appears to be personal journal or diary entries.[64]

However, none of the cited portions of the journal state that plaintiff specifically told his supervisor

of his Universal Belief System and how his Attire pertained to his religious beliefs. The second

citation refers to a "transcript" of plaintiff's coaching with the store manager, Mr. Shadrock.[65]

Plaintiff contends that his statement, "basically your [sic] kinda telling me that I shouldn't believe

in God the way I do, because this is how I believe in God," is sufficient to put defendant on notice

of his religious beliefs. [66]  However, none of the cited "evidence" demonstrates that plaintiff

expressly informed his supervisors of his religious beliefs and explained to them how his Attire

related to the beliefs.  At most, plaintiff alluded to a general concept of tolerance for other people's

religious beliefs.  However, vague allusions fail to demonstrate that defendant had actual

knowledge of plaintiff's religious beliefs.  This is particularly true where plaintiff's store manager

swears that he did not have specific knowledge of plaintiff's religious beliefs.[67]

     Accordingly, plaintiff has failed to demonstrate all the elements to establish a *prima facie*

case of religious discrimination resulting in discharge.  Viewing the whole record in the light most

favorable to plaintiff, no genuine issue of material fact remains for trial and defendant is entitled

judgment as a matter of law.  The District Court should **<u>GRANT</u>** defendant's motion for summary

---

[64] Docket Entry 46, Exhibit C at 55-56, 58.  It is unclear what evidentiary value the journal or diary offers. However, defendant has not specifically objected to the exhibit.

[65] Docket Entry 46, Exhibit D at 3-4.  Plaintiff refers to the document as a transcript of a recording. However, the transcript does not contain a sworn statement of the transcriber and it is unclear as to the evidentiary value of the document.  Nevertheless, defendant's counsel examined plaintiff about statements in the transcripts during the course of plaintiff's deposition.  Defendant has not specifically objected to the exhibit.

[66] Docket Entry 43 at 4 n. 18; Docket Entry 46, Exhibit E at 3.

[67] Docket Entry 38, Exhibit F at ¶ 8.

judgment as to plaintiff's claim that defendant terminated plaintiff's employment based on his religion and in violation of Title VII.

### 2. Did plaintiff demonstrate a *prima facie* case for failure to accommodate religious beliefs?

Plaintiff also complains that defendant refused to accommodate his religious beliefs. Plaintiff argues that defendant could have accommodated his beliefs by allowing him to work in the back room area of the store where he would have been out of the customers' view.

Defendant responds that plaintiff fails to meet the elements of his *prima facie* case because defendant did not have knowledge of his religious beliefs. Alternatively, defendant argues that it reasonably accommodated plaintiff by permitting him to wear the kaffiyeh. Furthermore, defendant challenges plaintiff's proposed accommodation as causing defendant undue hardship as it would have required creation of a new position for plaintiff to allow him to work exclusively in the backroom.

Plaintiff fails to establish the first element of a *prima facie* case under Title VII for failure to accommodate a religious belief. Nothing in the record demonstrates that plaintiff's religious belief required him to dress in a fashion that conflicted with defendant's dress code and anti-harassment and offensive conduct policy. Plaintiff does not point to any portion of his Universal Belief System that mandates that he wear certain types of clothing or symbols to express his religious beliefs. In his deposition, plaintiff admitted that the only other person who practices Universal Belief System, his mother, does not wear the same Attire that plaintiff wears.

According to plaintiff his belief system espouses religious tolerance and respect for all other religions. It teaches that peace is preferable to conflict. It is concerned with the spiritual rather

than the material.  Under the tenets of Universal Belief System, plaintiff strives to refrain from offending anyone.

Plaintiff admits that he was informed of customer complaints concerning his Attire.  He also admits that Ms. Gonzales explained to him that customers who follow the Catholic faith would be offended by his wearing a priest shirt and collar, particularly during the season of Lent. Plaintiff admitted to Ms. Gonzales that he was not aware of the importance of Lent to Catholics.[68] Therefore, plaintiff was aware that customers found his Attire offensive, but took no action to refrain from offending them in apparent contravention of the tenets of his religious beliefs.

While plaintiff objected to certain affidavit statements offered by defendant to support its motion for summary judgment, plaintiff did not contradict the allegations that he was seen in public without his religious Attire.[69]  Plaintiff also admits that he does not wear the Attire when he is working on his vehicle.  Based on the record as a whole, it is apparent that plaintiff's decisions of when and where to wear his Attire are based on his personal preferences and not a sincerely held religious belief that he should or must wear the Attire.[66]

Plaintiff also fails to meet the second element of his cause of action.  As explained above the record shows that plaintiff failed to inform defendant of his religious beliefs.  Mr. Shadrock expressly denies being informed by plaintiff of his beliefs.  The evidence that plaintiff identifies to dispute defendant's claim of ignorance amounts to general statements that do not specifically convey his beliefs or alleged religious reasons for wearing his Attire.

---

[68] Docket Entry 46, Exhibit G.

[69] Docket Entry 38, Exhibit D at ¶ 4, Exhibit E at ¶ 4.

[66] **See Coultier v. Costco Wholesale**, 311 F.Supp.2d 190, 197 (D. Mass. 2004) (explaining that Title VII does not provide protection to a personal preference).

As to the final element, plaintiff was indeed discharged for failing to comply with defendant's dress code and anti-harassment and offensive conduct policy. However, based on the foregoing analysis, plaintiff has not shown that the policies actually conflicted with a sincere religious belief, that being the necessity of wearing his Attire. Accordingly, plaintiff fails to establish the third element of his *prima facie* case.

Finally, even if plaintiff could establish his *prima facie* case, defendant has demonstrated that accommodating plaintiff would cause it undue hardship. The only accommodation proposed by plaintiff was to allow him to work his entire shift in the backroom of the store thereby removing him from the customers' view. However, plaintiff's proposed accommodation did not address his fellow employees' complaints. In order to accommodate plaintiff's wearing of the Attire and eliminate the adverse consequences to defendant's business from individuals offended by plaintiff's attire, defendant would have had to isolate plaintiff from both customers and other employees. Defendant did not currently have such a position and would have had to create a new position to accommodate plaintiff. Creating an entirely new position for plaintiff and segregating him from other employees would have imposed more than a *de minimus* cost to the employer. Accordingly, defendant has demonstrated that accommodating plaintiff would subject it to an undue hardship.

Viewing the whole record in the light most favorable to plaintiff, no genuine issue of material fact remains for trial and defendant is entitled judgment as a matter of law. The District Court should **GRANT** defendant's motion for summary judgment on plaintiff's claim that defendant failed to accommodate his religious beliefs in violation of Title VII.

## VII. Recommendation

Based on the foregoing, it is my recommendation that plaintiff's motion to strike be **DENIED**.  I further recommend that defendant's motion for summary judgment be **GRANTED**.

### VIII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this United States Magistrate Judge's Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  According to Title 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a <u>de novo</u> determination by the District Court.[67]  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to

---

[67] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 339 (5th Cir. 2000).

proposed factual findings and legal conclusions accepted by the district court.[68]

        **SIGNED on May 24, 2006.**

*Nancy Stein Nowak*

**NANCY STEIN NOWAK**
**UNITED STATES MAGISTRATE JUDGE**

---

[68] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d at 1428-29.